THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAMONA COLÓN RIVERA, Defendant and Appellant.

No. CR-65-331. Decided January 23, 1967.

*José Rafael Gelpí* and *José A. Bravo Abréu* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant was convicted by a jury of the crime of embezzlement and ordered to serve a suspended sentence of 2 to 7 years in the penitentiary. Said crime consisted, according to the information, in that while appellant was an employee of the firm Joyería Santurce, Inc., property of J. Tormes, and as such depositary of moneys belonging to that firm, during the period between March 17, 1959 and March 17, 1962, "with the intent to defraud, as she did defraud, the above-mentioned corporation and J. Tormes, unlawfully, wilfully, and maliciously, took possession of the amount of $3,717.19, in legal currency of the United States of America, which she received in her capacity of depositary of said moneys of the aforesaid corporation and which amount of money she was bound to deposit in the accounts of Joyería Santurce, Inc., taking possession thereof without the consent nor the authorization of Joyería Santurce, Inc., or Julio Tormes."

As first error it is alleged that the Superior Court left appellant without defense in permitting Joyería Santurce, Inc., "to make mockery of her rights by concealing documents absolutely necessary for the defense, the introduction of which had been timely requested."

The trial court, granting defendant a right of discovery of evidence broader than that authorized by the Rules of Criminal Procedure, entered an order prior to the trial directing Tormes, owner of Joyería Santurce, Inc., to put at the disposal of the defense all the books and other documents of the transactions performed by the referred firm during the period of three years covered by the information. We say this because neither Rule 95 of the Rules of Criminal Procedure, nor any other rule, authorizes the court to enter an order like the one entered in this case. Pursuant to the aforesaid Rule 95, on motion of the defendant, the court "may order the prosecution to permit the inspection and copying

or photographing by the defendant or his attorney, of any designated objects, books, documents and papers, not affidavits, with the exception of the testimony of the defendant himself, that. The People might have obtained from the defendant or from other persons by means of a judicial order or otherwise and which might be necessary for the preparation of his defense, irrespective of whether The People proposes to offer them in evidence or whether they are admissible in evidence."

In this case the books and other documents, the examination of which was requested by the defendant, had not been obtained by the People from said defendant nor from other persons, since they were not in the possession of the prosecuting attorney but of the owner of the documents, Joyería Santurce, Inc. The right of the defendant to the discovery of evidence prior to the trial is limited by Rule 95, to the evidence indicated in the rule itself, and which might have been obtained by the People from the defendant or from other persons in the manner provided therein.

In any event, in compliance with the cited order of the court, Tormes put at the disposal of the defense the documents which the latter had requested, but the defense did not use them for want of an accountant. On this incident the trial judge expressed himself as follows:

"Judge: First, there are two situations to be decided. First, the defense moves for the striking out of the testimonies of Juanita Folch and Julio C. Tormes. They allege, it is adduced, that 'corpus delicti' has not been established; therefore, all the statements made by these two witnesses should be stricken out. The contention is that the defense was not in a condition to continue because yesterday, or during this week, certain documents were not introduced, which according to the defense, could have served as ground for them to continue or establish their defense, an adequate cross-examination. As to the court, I request that it be established that the evidence does not contradict, it was in the sense that the sale or credit tickets to

which the defense refers were at their disposal. It does not contradict because Miss Folch and Tormes' testimony is in the sense that the documents were at the disposal of the defense and that once said documents were put at the disposal of the defense and the latter was unable to use them for want of an accountant, they were returned, and he, in the operation of his business, believed that it was no longer necessary to keep them and got rid thereof. There was, despite the time elapsed, no motion from the defense to keep the documents under the custody and jurisdiction of the court, so that nobody, nor even Tormes, could dispose of them, so that they could be used by the defense whenever the case came to court. If there was any lapsus of the defense, it cannot be attributed to the State. It cannot be concluded from an action which they believed was the most appropriate." (Report of the Solicitor General, pp. 3, 4.)

■ On the other hand, as pointed out by the Solicitor General, the court granted all the petitions of the defense for the introduction of documents and entered the corresponding orders. If the documents were not available because they had been destroyed or because of any other reason, the truth is that the defense, although it had ample opportunity to do so, it did not take the pertinent steps to insure the timely use of the aforesaid documents. The error was not committed.

The second error challenges the action of the Superior Court in ordering that defendant's statement, in the form of a letter, pass to the jury.

It is a letter written by the defendant to Tormes, in which she binds herself to reimburse him all the money which was missing.[1] The court ordered, over defendant's objection, that

---

[1] The text of the letter is the following:

"Don Julio:

When you called me, I went to the jewelry shop but it was closed.

I had spoken with Juanita, and explained to her that I will reimburse all the money which you find is missing, I swear that you will not lose a single cent.

I told her to add up everything and let me know, that everything

said letter pass to the jury when the latter retired to ·deliberate.

■ There is no doubt that said letter contains incriminatory statements and, as in the case of a confession, the jury should not have taken it with them upon retiring to deliberate. However, it does not entail the reversal of the judgment, in view of the circumstances which concurred in this case and in the absence of a showing that the action of the court was prejudicial to defendant. *People* v. *Martínez Díaz*, 90 P.R.R. 456 (1964).

The text of the letter had reached the jury through the statements made by the defendant to two witnesses for the People. Juana María Folch testified:

"A. She begins the conversation by giving me the note asking me to tell the boss to continue investigating, that she was willing to cover any deficiency. I suggested that she make the investigation herself, that she herself prove to the boss what the deficiency was. The conversation was not long. She merely said that she had to go because she was nervous and that she would come again Saturday morning." (Tr. Ev., Piece I, pp. 103–104.)

"⋅ . . . . . . ."

"Q. That Monday, the 26th, that you say she called you at about 7:30 a.m., what did she say?

---

will be answered for.

I *do not want you to talk with my father* because I don't want to cause him any trouble.

At the end of this month my husband is going to receive some money from a refund of the down payment for a house, and I will ask him for some of that money, and I will send it to you.

If there is any difference left unpaid, I will send it even though in *weekly* instalments.

I assure you that you will have all the money, irrespective of the amount.

I will appreciate that you will understand what I mean.

Thank you,

*Monin.*"

"A. She told me she had been unable to go because her doctor . . . to tell the boss that she would not come again, that he should continue searching and revising accounts, that she would answer for any amount which might appear in the deficiency." (Tr. Ev., Piece I, p. 104.)

". . . . . . . .

"Prosecuting Attorney: What is this I am showing you?

"A. A letter.

"Q. Whose handwriting is it?

"A. Defendant's.

"Q. I request that the letter and envelope be identified as 29.

"Judge: It is so ordered.

"Prosecuting Attorney: What happened in that meeting in Joyería Santurce where the three of you met?

"A. The defendant affirmed verbally what was said in the letter, she offered to pay weekly and to make an advance payment from some money she was to receive." (Tr. Ev., Piece I, pp. 104–105.)

Witness Tormes testified:

"Prosecuting Attorney: After the third interruption, tell me, what did she answer?

"A. Don Julio, I am going to pay you all the missing money, regardless of the time it takes. The only thing I want is that you do not inform my family. I replied 'You have already said that in the letter and I will consider it, but, what guaranty can you give me for the payment of the money?' 'I can not give any,' she said. 'My husband is going to sell one of the houses, or he is going to return one of the houses, with the money that they will reimburse him I am going to pay $700 and I will credit to the account whatever I earn weekly in another place.' I told her . . . ." (Tr. Ev., Piece I, p. 190.)

On the other hand, the defendant herself, testifying at the trial, admitted that she had signed the letter and that she had offered to pay a certain amount of money and to make some instalments afterwards, although she explains the incident of the signing of the letter in the following manner:

"Q. What did you tell him?

"A. I told him that I did not want to be involved in those things, that I was innocent, that my husband was going to re-

ceive some money as reimbursement of a down payment of a house and in order to leave things as they were, I would give him those two hundred dollars and as it was not enough from what he told me, I would pay him according to what my husband gave me, to which he told me that that was no guaranty, that I put it in writing, because he told me also that he would ask Miss Folch for the same thing.

"Q. Showing you Exhibit 29, please examine this document and tell me whether that is your handwriting.

"A. That is my handwriting.

"Q. Is that signature below yours?

"A. Yes, sir.

"Q. Is the date yours?

"A. No.

"Q. You did not write the date?

"A. No, sir.

"Q. You did not write the date?

"A. No, sir.

"Q. Why did you not write the date?

"A. Because that paper, he was telling me how to do it and he never told me the date.

"Q. He dictated this document and you wrote it as he dictated it in your own handwriting?

"A. Yes, sir.

"Judge: Which exhibit is it?

"Attorney Gelpí: The 29th." (Tr. Ev., Piece II, pp. 21 and 22.)

Although as a general rule to allow the written confession to go to the jury in violation of the provisions of Rule 140 of the Rules of Criminal Procedure would entail the reversal of the judgment and the granting of a new trial, the circumstances which concur in this case as we have set them forth, and even if, in strict law, it had been a confession, do not justify the reversal of the judgment. *People* v. *Ramos*, 84 P.R.R. 542 (1962).

In the third error it is alleged that the instruction as to what constitutes the crime of embezzlement was erroneous. This assignment of error is frivolous. The court read to the jury the section of the Penal Code which defines said crime

and then it used the language we approved in *People* v. *Reyes*, 19 P.R.R. 1088 (1913).

■ The fourth assignment is likewise frivolous. Appellant complains that the judge did not charge the jury as to the degree of the crime (of a lesser or greater degree) when the amount misappropriated is exactly one hundred dollars. The evidence did not give rise to a mistake on that particular. The amount fraudulently appropriated exceeded $3,000. Specific items which could bring the appropriation within the limits of one hundred dollars were not challenged.

The instruction given to the jury in the sense that the presumption of credibility which accompanies every witness may be rejected, among other reasons "considering evidence of contradictory statements or acts occurred related by the witness on the witness stand, with her declarations on previous occasions, although it has not occurred in the sacred precincts of the court," is assigned as the fifth error.

■ ■ This instruction was not excepted by the defense. Aside from it, and although it is far from being a model of clearness, the instruction refers to previous acts or statements of the witness outside the court, on which evidence has been introduced and admitted. Obviously, as the Solicitor General affirms, it does not refer to the knowledge that the jury may have had outside the court, particularly when there is not the least showing that it had occurred.

■ ■ The sixth error, if committed, did not injure defendant's substantial rights. Assuming that it were an error to allow the jury to pass on evidence of misappropriations occurred outside the period of three years provided by law, its effect was limited to the nature of the offense, felony, or misdemeanor. The evidence established, however, that eliminating the items objected to by the defense comprised within the prescribed period, the sum appropriated was $3,363.72 and not $3,719.19 as it was alleged in the information. On

the other hand, the defendant's *modus operandi* to commit the misappropriations was the same during all the period covered by the information.

 It is true, as adduced in the seventh assignment of error, that the trial court delegated on the jury "judicial functions instructing them that they could consider defendant's statements as evidence if they found that they were freely and voluntarily made, but they should reject and disregard them as evidence if they reached the conclusion that they were not freely and voluntarily made." However, it does not entail the reversal of the judgment because there was no controversy as to the voluntariness of the defendant's statements. In *People* v. *Arce Rodríguez*, judgment of February 9, 1966, we held, and apply here, the following:

"As to the first assignment of error, appellant is wrong. In the case at bar the defense did not object to the admission in evidence of the confession in question; it also did not raise any question as to the voluntariness thereof; nor from the record there appears any doubt, conflict or controversy on this particular. The trial court did not have before it any controversy or question as to the voluntariness of the confession for its decision. If a controversy as to the voluntariness of the confession would have arisen, there is no doubt that appellant would be right and that the judge would have had to decide the same. Rule 151.1 of the Rules of Criminal Procedure; *People* v. *Figueroa,* decided February 8, 1965; *Jackson* v. *Denno,* 378 U.S. 368. But as we have said, at no time was any controversy as to the voluntariness of the confession raised and, therefore, no controversy on that point emerged for the judge to decide. See *People* v. *Huntley,* 255 N.Y.S.2d 838, 841 (1965)."

 The defendant was not convicted on insufficient proof as it is alleged in the eighth and last error. In our opinion the Solicitor General properly answers this assignment of error in the following manner:

"The evidence for the People and that for the defense were conflicting. The first one established that the defendant worked

in Joyería Santurce, Inc. Her duty was to receive the money collected by the collectors of the jewelry from the customers, to make the corresponding entries in the customers' accounts and to deliver the money to the cashier with a report thereof. She received the money, credited it to the customer and to the collectors' receipts, but upon delivering the money she delivered only part of the amount received. That is, the notebooks she received from the collectors showed the amount received but the tickets she prepared and sent to the cashier with the money did not show the total sum received. (See as an example of the *modus operandi*, Tr. Ev.—I; pp. 18, 22–24, 27, 28, 30, 68, 117.) In some cases she did not hand over the total amount of the partial payment of a specific customer, while in others she handed over part of the payment and did not inform the rest, as it happened in the case of the customer Rafael Díaz Lebrón. On July 5, 1961 the latter paid $65.50 and she handed over to the cashier $10.50 only. (Tr. Ev.—I, p. 68.)

"The prosecuting attorney established the taking by means of the documents previously described as well as by means of defendant's oral admissions and a letter wherein she admits her liability. (Exhibit 29, Tr. Ev.—I, pp. 188–191.)

"The evidence for the defense consisted in denying any participation in the facts which gave rise to the proceeding. The defendant took the witness stand and tried to convince the jury that she had been accused as a scapegoat for the purpose of concealing an alleged fraud committed by the jewelry in prejudice of the State's taxing power. How is it possible that a jury, of average intelligence, could have believed that a corporation engaged in commercial transactions of hundred-thousand dollars, with the amount of excise taxes it entails, may seek to justify a fraud against the treasury accusing a simple employee for the embezzlement of such an insignificant amount before this circumstance, as that charged and established against the defendant? Obviously, the jury could not give credit to the evidence for the defense." (Report of the Solicitor General, pp. 10 and 11.)

The judgment appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Dávila concurs in the result.

